Gregg McLean Adam, No. 203436
    gregg@majlabor.com
Jennifer S. Stoughton, No. 238309
    jennifer@majlabor.com
Jill M. Menning, No. 305342
    jill@majlabor.com
**MESSING ADAM & JASMINE LLP**
580 California Street, Suite 1600
San Francisco, California 94104
Telephone:    415.266.1800
Facsimile:    415.266.1128

Attorneys for Donald Morrissey, Deputy Sheriffs' Association of Santa Clara County, and Doe Plaintiffs 1-25, Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD MORRISSEY, DEPUTY SHERIFFS' ASSOCIATION OF SANTA CLARA COUNTY, and DOE PLAINTIFFS 1-25<br><br>              Plaintiffs,<br><br>     v.<br><br>LAURIE SMITH, in her individual capacity and her official capacity as Sheriff of Santa Clara County, SANTA CLARA COUNTY SHERIFF'S OFFICE, and DOES 1 – 10, inclusive<br><br>              Defendants. | Case No.<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATION OF:**<br><br>1. **THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983;**<br>2. **CALIFORNIA CONSTITUTION, ARTICLE 1, § 2;**<br>3. **CALIFORNIA CONSTITUTION, ARTICLE I, § 1;**<br>4. **CALIFORNIA GOVERNMENT CODE § 3302;**<br>5. **CALIFORNIA GOVERNMENT CODE §§ 3201, *ET SEQ.*;**<br>6. **CALIFORNIA GOVERNMENT CODE § 3502.1; AND**<br>7. **CALIFORNIA LABOR CODE § 1102.5(B)**<br><br>[JURY TRIAL DEMANDED] |

Plaintiffs, DONALD MORRISSEY ("Morrissey") and DEPUTY SHERIFFS' ASSOCIATION OF SANTA CLARA COUNTY ("DSA") (collectively "Plaintiffs"), allege as follows:

**PARTIES**

1. Plaintiff Morrissey has been an employee of the Santa Clara County Sheriff's Office since 1999. Morrissey is a sheriff's sergeant. He was elected president of the DSA in 2013 and re-elected in 2015.

2. Plaintiff DSA is a non-profit unincorporated labor organization existing under the laws of the State of California. Its principle place of business is within the County of Santa Clara, California. Pursuant to the Meyers-Milias-Brown Act ("MMBA"), Government Code section 3500, *et seq.*, DSA is a labor organization certified as the exclusive bargaining representative for certain deputy sheriff classifications employed by the County of Santa Clara (the "County"). Plaintiff DSA has associational standing to assert statutory claims on behalf of its members.

3. Defendant Laurie Smith ("Smith") is the Sheriff for the County. She administers and manages the Santa Clara County Sheriff's Office. She approved, ordered, established and/or perpetrated the policies, practices and actions complained of herein.

4. Defendant Santa Clara County Sheriff's Office ("the Sheriff's Office") is a public entity operating under the laws of the State of California and a "person" within the meaning of 42 U.S.C. Section 1983 in charge of the general supervision and policy of the Sheriff's Office.

5. The true names and capacities of plaintiffs named as Does 1 through 25 are currently unknown to Plaintiffs, who therefore sue on behalf of plaintiffs by such fictitious names. Plaintiffs will amend this Complaint to show their true names and capacities when the same have been ascertained.

6. The true names and capacities of defendants sued as Does 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue these defendants by such fictitious names. Plaintiffs will amend this Complaint to show their true names and capacities when the same have been ascertained. Plaintiffs are informed and believe, and on that basis allege, that Does 1 through 10, inclusive, were responsible for the acts and transactions hereinafter alleged

7. Relief is sought against each Defendant as well as their agents, successors, assistants, employees, attorneys and all persons acting in concert or cooperation with them or at their direction.

8. Defendants were acting under the color of statute, ordinance, regulation, policy, custom or usage of Defendant Sheriff's Office at all times herein mentioned.

9. Plaintiffs are not required to file any government claim for the federal claims in this action. Plaintiffs have filed a Claim against the County of Santa Clara with the County with respect to those state law claims that seek damages. If the County accepts the Claim, Plaintiffs will amend this Complaint to dismiss their state law claims; however, in counsel's experience, neither the County nor any public agency accepts claims in cases of this nature.

## JURISDICTION AND VENUE

10. This civil action seeks injunctive relief and damages. Federal jurisdiction arises through 42 U.S.C. section 1983, *et seq.*, and the Constitution of the United States, including the First and Fourteenth Amendments thereto. Supplemental jurisdiction over Plaintiffs' state law claims is conferred on this Court by 28 U.S.C. section 1367(a).

11. This Court has personal jurisdiction over Defendant Smith because she is domiciled within the State of California.

12. This Court has personal jurisdiction over Defendant Sheriff's Office because it is incorporated and located within the State of California.

13. Venue is appropriate pursuant to 28 U.S.C. section 1391(b)(2) because the relevant events and omissions occurred in the County of Santa Clara, State of California, within the territorial jurisdiction of this Court.

## FACTUAL ALLEGATIONS

14. Smith has long fostered a culture of rewarding her political supporters and punishing her political opponents, or perceived opponents, through more or less favorable work assignments, promotion and non-promotion, in violation of typical norms of an agency governed by civil service rules. Because she is elected, Smith has long considered herself above rules,

regulations and norms promulgated by non-elected officials in the County of Santa Clara. The professional standards of the Sheriff's Office routinely come second to Smith's political agenda.

15. Plaintiff Morrissey was, and remains, one of the most widely respected peace officers in the Sheriff's Office. He has instructed other deputies and peace officers from other agencies on: use of force, force options, defensive tactics, basic SWAT, active shooter response, crimes in progress, incident command and firearms. He has instructed at the basic police academy and during in-house training sessions. He has also created or co-created courses run by the Sheriff's Office.

16. Morrissey was formerly a lieutenant in the Sheriff's Office and a rising star. He was at one time close with Smith and was appointed as her public information officer, a position that required him to interact closely with her. He was part of her circle of trust and even chauffeured her and consumed alcohol with her, off and—at her direction—on duty.

17. Morrissey's career trajectory changed dramatically in 2011. He was a popular lieutenant and sometimes acting captain within the Sheriff's Office and widely respected. He was approached on or about December 7, 2011, after 5 p.m., but before a Saratoga City Council meeting, by then Captain Carl Neusel (who was Morrissey's supervisor at that time and has since been appointed Undersheriff). Neusel came into Morrissey's office at the West Valley substation, closed the door, and told Morrissey that he needed to let the Sheriff know that he did not intend to run against her. Neusel told Morrissey that Smith thought he (Morrissey) had intentions to run for sheriff.

18. Shortly afterwards, Morrissey was subjected to a disciplinary investigation concerning inappropriate use of the Internet and demoted. Other employees who have been found guilty of misuse of the Internet have received minimal punishment.

19. Plaintiff DSA also formerly enjoyed a functional relationship with Smith. It endorsed her for reelection in 2010. Since that endorsement, the DSA has had an increasingly hostile relationship with Smith because it challenged Smith on multiple workplace issues, particularly the DSA's belief that the Sheriff's Office lagged significantly behind other Bay Area agencies in training, wages, recruitment and equipment.

20. The relationship fractured completely in 2014 when the DSA endorsed Smith's opponent in the election campaign. The DSA, Morrissey, who was elected to his first DSA office as president in late 2013, and DSA vice-president, Roger Winslow ("Winslow"), along with the union representing correctional deputies, became vigorous advocates against Smith's re-election bid. DSA members overwhelmingly voted to endorse her opponent and passed a vote of no confidence in Smith by a margin in excess of 89%.

21. Throughout the election, the DSA, Morrissey and Winslow issued public statements and press releases critical of the performance of Smith in her duties. DSA members displayed signage on their personal vehicles supporting Smith's opponent and distributed campaign literature while off duty. The DSA held a press conference on the steps of the Sheriff's Office supporting her opponent.

22. Smith responded with public statements to the media criticizing the DSA and making negative references about Morrissey. She described there was a "disgruntled group at the top of the DSA and they have been demoted and disciplined." The statement was a thinly-veiled attack on Morrissey and an illegal disclosure of confidential personnel information.

23. Smith also attempted to chill employees' political speech in favor of her opponent by threatening to investigate any deputies who posted signage favoring her opponent on their personal vehicles. After the DSA challenged the lawfulness of her attempts, she was persuaded by Santa Clara County Counsel not to conduct any investigation or issue any chilling memoranda.

24. During the election campaign, a prominent South Bay political operative asked Morrissey to meet with him. The individual advised Morrissey that he knew about Morrissey and his issues with Smith and that he might be able to help Morrissey resurrect his career with the Sheriff's Office if he would support Smith. The same individual met with other DSA representatives on similar themes.

25. On or about June 3, 2014, Smith was reelected.

26. Immediately after the election, beginning on approximately June 4, 2014, DSA representatives began reaching out to high-ranking Sheriff's Office personnel to attempt to build at least a working relationship with Smith, for the good of the Department. In a November 14, 2014,

meeting with Morrissey and Winslow, however, Smith expressed her unwillingness to move forward absent an apology by the DSA and a renunciation of the adverse public statements made against her in the election campaign. Morrissey pressed on the need to have a working relationship going forward in order to make the Sheriff's Office a model agency. But Smith continued to tell Morrissey and Winslow that they had to deal with the past first before moving forward. There were multiple witnesses to this meeting.

27. Efforts to rebuild the relationship failed.

28. Subsequently, Smith subjected Morrissey, Winslow and other DSA members to retaliation for their associational activity on behalf of the union and their political opposition to her election.

29. Smith denied opportunities for leadership positions, promotions and career advancement to anyone she suspected of supporting the DSA's position in the election. She disciplined and retaliated against DSA supporters. Smith publicly commented on her dislike and distrust of her employees based on whether they had a role in the DSA and opposed her reelection.

30. In June 15, 2015, the DSA wrote to Smith and the Santa Clara County Counsel raising concerns about whether Smith was violating the California Government Code and federal law in the manner in which she was administering the County's supplemental law enforcement services program (known as "pay jobs"). The only response to the assertion came in a Sheriff's Office memorandum dated August 10, 2015. In it, Smith prohibited DSA-represented employees from performing pay jobs. She stated, "[t]he DSA's challenges and concerns have placed an ongoing burden on the efficient operation of the pay jobs unit. Accordingly, until the issues alleged by the DSA are resolved, the sheriff and her administration regret that pay-jobs will no longer be available to regular deputy sheriffs of all ranks." Smith made no effort to "resolve" the issues and even allowed reserve deputies—who are not represented by the DSA—to continue working pay jobs despite her use of reserves being one of the main issues raised by the DSA.

31. After his 2011 discipline, Morrissey was barred from teaching at the academy. He was invited back in late 2015 to instruct classes on Crimes in Progress and Defensive Tactics. At the conclusion of the academy he was voted Most Inspirational Instructor by the recruits. Smith

precluded Morrissey from teaching from that point forward. Morrissey was told by his lieutenant that it was for budgetary and assignment reasons—yet other instructors continued to have their schedules adjusted so they could teach and they continued to be paid overtime.

32.     In 2015, Morrissey tested for lieutenant, a position he had held between 2009 and 2011. Morrissey's test scores placed him second on the list. But on two occasions Smith passed him over for lower-ranked candidates. As well as having previously served as a lieutenant, Morrissey had 22 weeks experience serving as a work out of class captain, a Bachelor of Science in Business Management, graduated the Sheriff's Leadership Development course and held a Peace Officer Standards and Training Management Certificate. One of the candidates selected over him did not possess a bachelor's degree or any of the other credentials Morrissey held.

33.     In 2015, Morrissey also tested first for a favorable assignment to the Rapid Enforcement Allied Computer Team ("REACT"). He also had significant tactical and supervisory experience. Morrissey's appointment was approved all of the way up the chain of command until Smith personally intervened and blocked it. A recently promoted sergeant with no tactical or supervisory experience was selected for the position.

34.     In 2015, Morrissey was transferred to the Detective Division. He was advised by a senior supervisor and others that he was "under a microscope." Morrissey was required to punch in and out during lunch breaks—something not required of other employees.

35.     While at the Detective Division, Morrissey was asked to coordinate and handle the tactical portion of a search warrant by a peer. But he was not allowed to participate in the search warrant because, as his captain informed him, "Don, how would that look upstairs if I did." Morrissey took the reference to "upstairs" to be to the fourth floor, where the command staff preside.

36.     DSA vice-president Winslow also faced retaliatory action. For example, in April 2016, acting in his associational capacity he contacted county personnel staff to clarify a deputy's rights to take statutorily protected medical leave. The supervisor who had blocked use of the deputy's leave request directed Winslow's supervisor to prepare a record of discussion—a form of discipline—premised on Winslow violating general orders and jumping the chain of command.

1  37. In late 2015, a sheriff's deputy was arrested on charges of brandishing a firearm
2  and driving under the influence. The arrest received significant media coverage and the DSA
3  made comments to the media. Immediately thereafter, at lineups of deputies, certain lieutenants
4  and captains who are known as Smith loyalists, waged a campaign of openly blaming the DSA for
5  the story going public. This was done deliberately to attempt to undermine the DSA, and
6  Morrissey and Winslow in particular, in the eyes of its members.

7  38. In 2016, Morrissey has been subjected to two disciplinary actions. Plaintiffs allege
8  on information and belief that Morrissey was more severely disciplined because of his actions as
9  DSA president—to punish him and to undermine the DSA's standing to oppose Smith's re-
10 election in 2018. These disciplinary actions did not follow regular Sheriff's Office practices
11 because of Smith's desire to retaliate against Morrissey and the DSA. In one of the actions,
12 Morrissey was demoted from sergeant to deputy, effective August 15, 2016, for failing to report
13 offensive, off-duty text messages he received from other Sheriff's Office employees. Morrissey
14 was cleared of any wrongdoing by an outside investigator for any texts he sent. Another
15 supervisor who admitted originating text messages was not subject to any discipline or even
16 investigation. Supervisors who have had sustained complaints for actual harassment and
17 discrimination received substantially lesser penalties than Morrissey received for receiving and not
18 reporting texts.

19 39. In the second action, Morrissey was investigated in June 2016 for allegedly
20 improperly printing an incident report in September 2015—even though at the time of the incident
21 Morrissey had written a report to his supervising captain explaining that he had printed the report
22 by error, something which in itself was not unusual within the Sheriff's Office. Smith nonetheless
23 pressed forward with an investigation against Morrissey. Others who also viewed the report under
24 similar circumstances to Morrissey were not investigated.

25 40. Smith's attacks on perceived political opponents long precedes Morrissey,
26 Winslow and the current DSA board of directors. One DSA member openly supported a rival
27 candidate in the 2010 election for sheriff. Subsequently, he was accused of trying to undermine
28 the specialized unit he worked in and he was told by a then lieutenant (now captain) that his name

"was synonymous with asshole on the 4th floor" – referring to where the command staff and Smith's offices are. The same employee has been told he has been banned from teaching at the academy and overlooked for a specialty assignment that he is more highly qualified for than any other Sheriff's Office employee.

41. In early Summer 2016, in a Facebook post, Smith's long-time political campaign manager Richard Robinson remarked that Smith "now needs change at the leadership of the DSA and she can make the changes she needs to make the jails safe."

42. Morrissey, Winslow, and how to politically damage the DSA are routinely discussed by Smith, her political consultants and certain other high-ranking members of the Sheriff's Office.

43. An internal case Morrissey handled epitomizes how Smith runs the Sheriff's Office. In 2010, as the lieutenant in-charge of the Records Division, Morrissey handled a complaint by a Records Division technician that she was being sexually harassed by her co-worker and supervisor. Morrissey conducted an investigation, and discovered the co-worker and supervisor were making inappropriate comments to her. Morrissey made his report but was later directed to change his findings, eliminate the findings against the supervisor, and sustain the charges against the co-worker. Morrissey was told that the supervisor would retire if subject to discipline and Smith relied on the supervisor to do certain things for her.

44. On June 20, 2016, the Blue Ribbon Commission on Improving Custody Operations (the "Commission") issued a report after a lengthy investigation into the Sheriff's Office and the Santa Clara County jails. The Commission's investigators interviewed 33 employees of the Sheriff's Office and learned from those interviews that favoritism and retaliation by Smith and her Administration permeates the workplace.

45. In March, 2016, as the Commission was preparing its Final Report, Smith sought out its appointed head, Judge LaDoris Cordell, for an impromptu and highly irregular one-on-one meeting. During that meeting, according to Judge Cordell (in an email subsequently published in the news media), Smith (1) shared materials that were the subject of personnel investigations, including into Morrissey and (2) encouraged Judge Cordell to give Smith preferential treatment in

the Commission's Final Report lest it provide materials that the DSA could use to damage her re-election chances in 2018.

## FIRST CLAIM FOR RELIEF

### VIOLATION OF TITLE 42 UNITED STATES CODE SECTION 1983

46. Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

47. Defendants violated Plaintiffs' First and Fourteenth Amendments rights and as such violated Title 42 U.S.C. section 1983.

48. Defendants Smith, the Sheriff's Office, and Does 1-10 subjected Plaintiffs Morrissey and the DSA to punitive actions, intense scrutiny, and excessive discipline, and otherwise retaliated against Plaintiffs for their exercise of constitutionally-protected speech during and in retaliation for Plaintiffs' participation in protected political activities and in violation of their rights to freedom of association.

49. Furthermore, Defendants subjected Plaintiffs Morrissey and DSA to punitive actions because of its advocacy for its members over pay jobs, in retaliation for Plaintiffs' participation in protected political activities and exercise of their freedom of association.

50. Defendants Smith and the Sheriff's Office and Does 1-10 have each committed the herein alleged illegal acts and conduct under color of statute, ordinances, regulations, customs and/or usages of the State of California, County of Santa Clara, and have deprived Plaintiffs of their rights, privileges and immunities secured to them as a result of defendants illegally retaliating against them in the exercise of their constitutional right of free speech and political activity.

51. As a direct and proximate result of the aforementioned wrongful conduct of Defendants, plaintiffs have suffered actual damages, including but not limited to loss of salary, benefits, diminution of retirement benefits, and compensatory damages for violation of constitutional and statutory rights including, but not limited to, humiliation, indignity, loss of professional and personal reputation in an amount according to proof.

52. Defendant Smith has willfully, wantonly and intentionally acted to oppress and injure Plaintiffs as a result of their legitimate exercise of their constitutional right of free speech

1  and participation in associational activity, justifying an award of punitive damages in a sum
2  according to proof.
3      53.    As a result of the foregoing, Plaintiff are entitled to injunctive relief to prevent this
4  ongoing violation of law.
5      WHEREFORE, Plaintiffs pray for relief, as hereinafter set forth.

**SECOND CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA CONSTITUTION ARTICLE I, SECTION 2, FREEDOM OF SPEECH**

8      54.    Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth
9  herein.
10     55.    California Constitution Article I, Section 2 provides in pertinent part as follows:

> Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press.

13     56.    Plaintiffs, in the exercise of their right of free speech before, during, and after the
14 course of the election campaign for the office of Sheriff, were subjected to reprisal and retaliation
15 by Defendant Smith in violation of California Constitution, Article I, Section 2, with the
16 knowledge and consent of Defendant Sheriff's Office.
17     57.    As a result of the foregoing, Plaintiffs are entitled to injunctive relief to prevent this
18 ongoing violation of law.
19     WHEREFORE, Plaintiffs pray for relief, as hereinafter set forth.

**THIRD CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA CONSTITUTION, ARTICLE I, SECTION 1**

22     58.    Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth
23 herein.
24     59.    At all times mentioned herein, California Constitution Article I, Section 1, provided
25 as follows:

> All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring and possessing and protecting property, and pursuing and obtaining safety, happiness and privacy.

60. Defendants Sheriff's Office and Smith violated Article I, Section 1, of the California Constitution when they denied Plaintiffs their liberty and property rights by engaging in retaliatory conduct in response to Plaintiffs' participation in political and associational activity.

61. As a result of the foregoing, Plaintiffs are entitled to injunctive relief to prevent this ongoing violation of law.

WHEREFORE, Plaintiffs pray for relief, as hereinafter set forth.

**FOURTH CLAIM FOR RELIEF**

**CALIFORNIA GOVERNMENT CODE SECTION 3302**

62. Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

63. At all times mentioned herein, Defendant Sheriff's Office was a public agency within the meaning of the Public Safety Officers' Procedural Bill of Rights Act ("POBRA") as set forth in California Government Code section 3300, *et seq*.

64. At all times mentioned herein, Plaintiff Morrissey was a public safety officer as defined by POBRA and entitled to the rights and protections of POBRA and Plaintiff DSA represented public safety officers as defined by POBRA and was entitled to the rights and protections of POBRA.

65. Government Code section 3302(a) of POBRA provides as follows:

> Except as otherwise provided by law, or whenever on duty or in uniform, no public safety officer shall be prohibited from engaging or be coerced or required to engage in political activity.

66. The Defendants' actions of excessive scrutiny, demotions, disproportionate punishment, restriction of promotions or transfers, and otherwise punitive actions, as a result of Plaintiffs' participation in political and associational activity constituted unlawful retaliation and reprisal in violation of their statutorily protected right to engage in political activity under California Government Code section 3302(a).

67. As a direct and proximate result of the violations under POBRA by Defendants, the Defendants are liable to Plaintiffs, and each of them, for a civil penalty in an amount not to exceed $25,000 for each and every malicious violation by Defendants pursuant to California Government

Code section 3309.5(c) in addition to actual damages sustained by Plaintiff Morrissey according to proof.

68. As a result of the foregoing, Plaintiffs are entitled to injunctive relief to prevent this ongoing violation of law.

WHEREFORE, Plaintiffs pray for relief, as hereinafter set forth.

**FIFTH CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA GOVERNMENT CODE 3201, *et seq.***

69. Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

70. At all times mentioned herein, California Government Code sections 3201–3203 protected the rights of public employees, including County employees, to engage in political activities as set forth:

> Section 3201. The Legislature finds that political activities of public employees are of significant statewide concern. The provisions of this chapter shall supersede all provisions on this subject in the general law of this state or any city, county, or city and county charter except as provided in Section 3207.
>
> Section 3202. This chapter applies to all officers and employees of a state or local agency.
>
> (a) "Local agency" means a county, city, city and county, political subdivision, district other than a school district, or municipal corporation. Officers and employees of a given local agency include officers and employees of any other local agency whose principal duties consist of providing services to the given local agency.
>
> (b) "State agency" means every state office, department, division, bureau, board, commission, superior court, court of appeal, the Supreme Court, the California State University, the University of California, and the Legislature.
>
> Section 3203. Except as otherwise provided in this chapter, or as necessary to meet requirements of federal law as it pertains to a particular employee or employees, no restriction shall be placed on the political activities of any officer or employee of a state or local agency.

71. The Defendants' excessive scrutiny, demotions, disproportionate punishment, restriction of promotions or transfers, Discussion of Record, and otherwise punitive actions as a

result of Plaintiffs' participation in political activity violates Plaintiffs' right to engage in political activities in violation of California Government Code sections 3201–3203.

72. The Defendants' actions violated and undermined the public policy of the State of California as set forth in California Government Code sections 3201, *et seq.*, justifying an award of compensatory damages according to proof.

73. Defendant Smith has willfully, wantonly and intentionally acted to oppress and injure Plaintiffs as the result of their legitimate exercise of Government Code section 3201, *et seq.*, in violation of fundamental public policy justifying an award of punitive damages against Defendant Smith in a sum according to proof.

74. As a result of the foregoing, Plaintiffs are entitled to injunctive relief to prevent this ongoing violation of law.

WHEREFORE, Plaintiffs pray for relief, as hereinafter set forth.

### SIXTH CLAIM FOR RELIEF

### VIOLATION OF MEYERS-MILIAS-BROWN ACT SECTION 3502.1

75. Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

76. Meyers-Milias-Brown Act ("MMBA"), section 3502.1 provides:

> A public employee shall not be subject to punitive action or denied promotion, or threatened with any such treatment, for the exercise of lawful action as an elected, appointed, or recognized representative of any bargaining unit.

77. Plaintiff Morrissey holds the position of president for the DSA, the certified exclusive bargaining representative for the County's sheriff's deputies, pursuant to the Ralph C. Dills Act (Gov. Code § 3512, *et seq.*).

78. Defendants took retaliatory action against Plaintiffs Morrissey and the DSA by subjecting him and DSA officers and supporters to excessive scrutiny, demotions, disproportionate punishment, restriction of promotions or transfers, and otherwise punitive actions, in retaliation for conducting political, labor and associational activity, in violation of MMBA section 3502.1, including but not limited to banning Plaintiff DSA's members from participating in "pay jobs"

1 effective August 10, 2015, as a direct result of Plaintiff DSA's allegation of Defendants' violation

2 of state and federal law.

79. Defendant Smith has willfully, wantonly and intentionally acted to oppress and injure Plaintiffs as the result of its lawful action as a recognized bargaining unit justifying an award of punitive damages against Defendant Smith in a sum according to proof.

80. As a result of the foregoing, Plaintiffs are entitled to injunctive relief to prevent this ongoing violation of law.

WHEREFORE, Plaintiffs pray for relief, as hereinafter set forth.

### SEVENTH CLAIM FOR RELIEF

### VIOLATION OF CALIFORNIA LABOR CODE SECTION 1102.5(B)

81. Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

82. California Labor Code section 1102.5(b) states the following:

> An employer, or any person acting on the behalf of the employer, shall not retaliate against an employee for disclosing information to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, or testifying before, any public body conducting investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

83. As a result of the foregoing, Plaintiffs are entitled to attorneys' fees, injunctive relief, declaratory relief, and damages, to make its members whole, and to restrain Defendants from violating this provision in the future.

WHEREFORE, Plaintiffs pray for relief, as hereinafter set forth

### PRAYER FOR RELIEF

1. For general damages in excess of $50,000 and according to proof;

2. For special damages according to proof;

3. For equitable relief, including a mandatory injunction prohibiting retaliation against Plaintiffs and Plaintiffs' members and restoring plaintiff Morrissey to his former rank and assignments;

4. For a civil penalty in the amount of $25,000 for each violation of California Government Code section 3302;

5. For punitive damages against Defendant Smith pursuant to state and federal law and according to proof.

6. For attorneys' fees pursuant to 42 U.S.C. section 1988, California Code of Civil Procedure section 1021.5, California Government Code section 3309.5 and any other basis;

7. For costs of suit herein incurred; and

8. For such other and further relief as this Court may deem necessary and proper.

Dated: August 9, 2016                MESSING ADAM & JASMINE LLP


By    /s/ Gregg McLean Adam
      Gregg McLean Adam
      Jennifer S. Stoughton
      Jill M. Menning
      Attorneys for Plaintiffs Deputy Sheriffs' Association
      of Santa Clara County and Donald Morrissey

Plaintiffs hereby demand a trial by jury.

Dated: August 9, 2016                MESSING ADAM & JASMINE LLP


By    /s/ Gregg McLean Adam
      Gregg McLean Adam
      Jennifer S. Stoughton
      Jill M. Menning
      Attorneys for Plaintiffs Deputy Sheriffs' Association
      of Santa Clara County and Donald Morrissey